9th Circuit is now in session. Please be seated. Good afternoon, everyone. This is the time and place for oral argument on Arrowhead Capital Finance v. Picturepro. I just want to thank Judge Kennelly for sitting with us, and he will be sitting with us for a couple more days this week. And from today, literally, the Northern District of Illinois. So thank you very much, Judge Kennelly. So let's take up argument. Mr. Stillman. Good afternoon, Your Honors. I just wanted to thank you for making the accommodation for being here today. We have three in enforcing the unserved subpoena. There are two subpoenas here. One was not served, and there was no proof of service required by Rule 45. And the second was issued after the court required that Arrowhead get leave of court to serve a third-party subpoena, which it did, and it then served substantially the same subpoena. So putting all other things aside, there's no dispute that the first subpoena was not properly served, and there's no proof of service required by Rule 45 before. And the second subpoena, there's no dispute that it was never served at all. It was served by mail, and it didn't have a place of compliance or a time for service. And so the magistrate erred, and the district court erred in accepting that, that somehow the original subpoena, the disputed subpoena, as we call it in the brief, could be somehow enforced, despite the fact that there was no finding by the New York court that it was enforceable. We filed a motion to quash that subpoena in a timely way and argued that it should be served. And so it's, to me, the trial court erred as a matter of law in enforcing the wrong subpoena. Mr. Stillman? Yes. Sorry to be speaking at you from a screen, but in your brief, there's a suggestion that the initial subpoena needed some sort of leave of court before it could be relied on. Is that an argument that you're making? No, Your Honor. I think it was, I think, it might be you have misread it. What we said about regarding the first subpoena, which I call the disputed subpoena, is that it was never properly served on picture pro. And when we challenged, we found that there was never a proof of service certified by the server filed with the court as required by Rule 45B-4. It's the second subpoena that was issued after the court required, after the court made clear that to send out third-party subpoenas, the arrowhead had to get leave of court to do so. And in fact, right after that order was issued, Arrowhead issued the same basic subpoena to picture pro that it had issued previously. The only thing to withdraw from that is that he knew that the first subpoena was not valid because the court subsequently said, you need to get, give us, I'm sorry, you need to obtain leave of court to send out third-party subpoenas. And then the rules, though, that requires there to be leave of court before you serve a subpoena, right? I'm sorry, you're on? There's nothing in the rules that requires you to get leave of court before you serve a subpoena, even if it's post-judgment, right? No, not that I'm aware of. Okay. Certainly not. As far as I'm aware, that's not the case. However, the issue in the first one was the service issue and that it's over breadth. And that's why we filed a motion to quash. Then the court said, no, wait a minute, you need to get, I'm ordering you to give, to get a leave in order to file a, to serve third-party subpoenas at this, these are, these are collection of judgment subpoenas. And that one is the one that was never served on us. That's why, that's why Picture Pro says that neither of those subpoenas are valid or effective and can be enforced by the, by the misdemeanors proceeding. So Picture Pro says that the, that what, what I'm calling the first subpoena was served by hand on his fellow Hoffman at the registered office, which was his house out in Los Angeles. Is that not right? That is not correct. Okay. So what did happen? Service, apparently some, what supposedly happened was that at some point there was a, a rain soap subpoena in the front yard of, of this, of the building. And that's it. There was no in-hand service. There was no put it in the door, nothing like that at all. And, and then when we demanded that we have served that, that the, that they provide service, proof of that service as required by rule 45B4, nothing was provided except the declaration from Mr. Golden, Arrowhead's counsel saying that it was served in some fashion, but the sort of, but the, but B4 was never complied with because the server never actually filed anything saying how it was served. So, and then when we got that, we then objected to the service by motion of quash. So, and that's why I believe that neither of the subpoenas can be enforced by the court. And so I want to touch, I want to touch briefly on the idea that, I mean, if that the, we, that PicturePro waived its objections, because if it waived it, we filed, and I think the case law is cited in our brief very clear, PicturePro filed a motion of quash, we challenged the subpoena, we challenged both of the subpoenas, so it doesn't seem that we need to do anything other than challenge those subpoenas. And yet the court continuously said we waived our objections by not objecting to it when we in fact did object to both subpoenas. I want to turn briefly, because I want to reserve a little bit of time, just for the issue of sanctions. Due process, an opportunity to be heard, fundamental. And in this case, we, the PicturePro did not get due process and opportunity to be heard. Inherent power sanctions were imposed upon PicturePro by the district court, and the only, the only notice, the only notice was the tentative ruling which was given to us the afternoon prior to the hearing, and then of course our argument to the court at that time. But I don't, that is not sufficient notice and opportunity to be heard. We're entitled to brief the issue. We're entitled to know what the sanctioning standard is that the court's going to impose upon us before the court decides to do so. So about that, the, the, the, the magistrate judges, the RNR, I think did not rely on inherent powers or bad faith, basically relied on rule 37. But the argument that's made is that there's enough in there in the way of findings to put, to have put you on notice that bad faith was an issue. What do you have to say about that? I don't think that's accurate, Judge, because you know, the standard applicable to rule 37 sanctions is that it's not substantially justified, that the position's not substantially justified, whereas the standard for inherent power sanctions, it's a very high standard and it's used, it has to be used sparingly, and it requires actual bad faith. And, and I, and I submit to the court that, that there is no actual bad faith here, either finding of actual bad faith or a reasonable argument that there was a, a bad faith by, by PicturePro in how it, how it dealt with this, the subpoena in this very contentious issue that's been going on for a very, very long time in the New York courts. And with that, unless there are other courts have any questions, I'd like to reserve a little time. All right. Thank you, counsel. Mr. Klappach. Yes, may it please the court, Joseph Klappach for the Appellee Arrowhead Capital. Let me just address the two arguments that my opposing counsel has raised. First, the record fully supports the district court's finding, which would be reviewed for a clearly erroneous evidence, whether it was clearly erroneous, the factual finding, that PicturePro was personally served with the March 10th, 2020 post-judgment subpoena. He says that it was never properly served. There was no proof of service filed. That is just false. The record contains a proof of service from a registered process server named Robert Hall, who personally served Peter Hoffman, the registered agent of PicturePro on March 10th, 2020 at the Orange Drive residence in Los Angeles, California. That proof of service is located in this court's excerpts of record on volume three at page 416. It's also located in the lower court's docket at docket number 20-1 at page one. It was before the court. The court was talking about it at the hearing about this proof of service saying, you know, what's this number here? I'm seeing 265-266-5 in the court's, in the New York court's docket, which is where the Arrowhead was required to file the proof of service in the issuing. Mr. Klappach, sorry if I mispronounce your name. Mr. Stillman said something about dropping it on the front lawn. What, is that just wrong? Well, there, that was their claim. Their claim was that it was dropped on the front lawn, but that was rejected by the court. The court made a finding that it was properly served based on the proof of service that's in the record. And that, that finding is reviewed for whether it's clearly erroneous. And, and that's, that governs on appeal that there's more than enough evidence here. And in fact, I would note that it wasn't just the district court that made this finding. It was also the magistrate that made this finding and also the New York court made this finding. In fact, if you look in the courts the New York courts, February 5th, 2021, a quarter at, which is located in volume two of the excerpts of record at page 138, the New York court there states quote, the court concludes that the substance of plaintiff subpoena to PPL, which is picture pro and the manner of issuance and service comply with all the, all the provisions of rule 45. So we have, so, so, so what's the evidence that supports the finding of the court that there was proper service? Uh, the, the proof of service from a registered process server that states, uh, that it was served on Robert Hall. And not only that, but he provides a factual description of what he looks like. Uh, and that's at page, like I said, 416 of the excerpt from record and docket 20 dash one. Uh, and the, the court was presented with that from a registered process server saying that I personally served this on the, uh, on the registered agent of process that was also part of the record, uh, that Mr. Hoffman is a registered agent of, uh, picture pro that's at volume two of the excerpts of record at page one 91 to 94, it's a business search showing the, the agent for service of process. Counsel, is it typical for such a description to be included in a process? Um, oh, no, it's, it's not, not usually done. Uh, I was wondering about that. I've never seen this. It was done in this case because there was substantial evidence that he was trying to duck service. And in fact, you can see there was a efforts to, to do service of the petition in this case, where they went to his house on seven different occasions. They couldn't find them. He was nowhere to be found. Uh, and so when they'd learned from all the prior litigation and all the prior problems that they've had, when you can serve this guy, darn it, write it down, jot all your, you know, cross all your T's and dot all your eyes. And that's exactly what they did here. And the courts below and in New York looked at this and said, we believe it. We believe that this private process server, Robert Hall actually did the service on the date and time that he stated at the location that he stated. And, uh, and that finding is subject to very deferential review on appeal. To clap is my main question for you asked to do with the sanction. So it, to me, at least it's pretty clear that the magistrate judge in the RNR didn't rely on bad on the inherent powers. It was all about rule 37. And so my, my question is how, I mean, there are cases that basically say that there has to be advanced notice, not just of the fact of seeking sanctions, but of the basis on which they're sought. So, and, and how, how is there, how is there advanced notice or sufficient notice of the fact that sanctions were being sought here are going to be ordered based on inherent powers and bad faith? Uh, I think, uh, I think that's a, I would reframe the issue slightly, uh, in light of the nine circuits controlling authority on this issue. And I would refer the court to the tombs case T O O M B S at seven, seven, seven F second, uh, four 65. And then the relevant discussion is at page four 72. And what the court held there is that due process requires only that the parties subject to sanctions have both sufficient opportunity to demonstrate that their conduct was not undertaken recklessly or willfully. Uh, and so the test in the ninth circuit is, did you have an opportunity to defend the conduct for which sanctions was being imposed? Not, did you have notice of the very specific legal ground on which the trial court was going to impose? So how, how was their notice or advanced notice that there was going to be a need for a finding of recklessness or, because that's not what it was. I think there was advanced notice here, uh, to picture pro in multiple forms. First, you have, uh, the fact that the petition itself requests sanctions in the amount of roughly $12,000. And it describes some of the bad faith litigation conduct that a picture pro had engaged in prior to the service of the petition. Second, you then had, uh, the, the magistrate judge who conducted an actual hearing on the sanctions award. And the, the, the, the judge said, look, I'm, I'm thinking about awarding sanctions here, and I think that there was bad faith conduct here and, uh, listed out some of the bad faith conduct that, that was, uh, that took place. And then, uh, picture pro had an opportunity at that hearing, which is in docket number 13, uh, to address that finding, uh, she, the, the, the magistrate starts off the hearing at page five at docket number 13 of the transcript saying I'm inclined to award sanctions here, uh, picture pro has the opportunity to discuss it later on in the hearing, which it does. So you're, you're saying, so you're saying at the outset of the hearing before the magistrate judge, the magistrate judge specifically, faith is being an issue. Well, the, the magistrate judge, uh, did not specifically use the word bad faith, but specifically you admit, let me clarify the, the, the magistrate judge said, I think there is sanctionable conduct. Well, yeah, but I mean, that's the, that's, that's the whole point, I guess. Cause you know, rule 37 provides for sanctions too, but it doesn't require any finding of intent. And the magistrate judge in, in, in the RNR specifically referred to rule 37, not to anything other than mark, I guess. Correct. And I guess all, I guess where I would refer the court back to is the actual facts of the tombs case. In that case, a party showed up on the day of trial with a late trial brief and, uh, and a bunch of exhibits. And the, the, the trial judge said, I'm going to entertain a motion to strike this trial judge and to not allow these exhibit, I'm sorry, strike this trial brief and to not allow these exhibits until the, the council made the argument, well, look, we resubmitted this in good faith. We wanted to be, uh, thorough in what we provided to this court. And the trial judge then said, okay, I don't believe it. I'm striking it. And I'm awarding sanctions under the inherent power of the court. And the ninth circuit in tomb said that's okay because they knew the conduct that was at issue. The conduct was they filed a late trial brief and they, uh, you know, they had late exhibits. And so therefore they had a chance to, uh, to, to defend that conduct. And so the fact that the trial judge didn't even say, I didn't even give them a warning. I'm thinking about sanctioning you. It's, they still is still satisfied the very low bar for due process. And so I think this case is controlled by toons. Uh, and I would strongly encourage the court to follow the rules set forth in tombs, what the standard is, whether or not they have a sufficient opportunity to demonstrate that their conduct was not undertaken recklessly or willfully. They had that opportunity here on multiple occasions, all of the misconduct for which the sanctions were awarded was listed out in the magistrate judges report and the, uh, and they had a chance to file objections to that. It was considered and it was rejected by the district court who said, not only do I agree with all that bad faith conduct, but I found even more bad faith conduct in your actions before me. And so I think that is sufficient in terms of notice and opportunity to be heard under the controlling decision toons. Uh, and I, that's how I would respond to that concern by your honor. Uh, and I see I've run out of time unless there are further questions I will submit. All right. Thank you. Counsel, um, Mr. Stillman. Thank you. Uh, I think, I think with all due respect to, uh, opposing counsel, uh, it's just a misreading of, uh, I think the, the law on the issue of sanctions, uh, you know, inherent power sanctions are something that, uh, that need to be especially carefully applied and, and the, and the party that's potentially being sanctioned needs to know not only what the, that he, that the, what the sanctionable conduct is, but what the, uh, what the operative sanctionable pop authority is, you know, is it rule 11? Is it rule 37? Is it, is it inherent powers? Is it section 1927? Counsel refers to reckless conduct. That is not a, that is not, and never has been sufficient to show actual bad faith under the inherent powers. Um, and, and so I think the sanctions issue is, is just plainly wrong. Uh, and, and the, and it's not enough to know that, oh, one of the judges, you know, the magistrate didn't like this conduct it's, it's gotta, it's gotta show, and the party has to be aware of I'm going, I'm considering sanctions, whether in order to show cause for a specific, uh, under a specific standard that we can then argue that whatever happened in the court didn't meet and the tomb standard is not correct and not applicable in this case. Cause it was a, it was a violation of the court scheduling order at the time of trial. That's a completely different situation from when we, what we have here, which is a, which is a literally a motion hearing and a, and a procedure dealing with motions. And I'll only know that Mr. Mr. Hoffman is six to 75 years old and weighs about 250 pounds. And so, and one of the, one of the reasons that we said that the, uh, that that does subpoena was invalid was that it wasn't served on him and that's why. Uh, and, and so, you know, it doesn't even describe the describe Mr. Hoffman correctly, but it's even putting that, that doesn't even, the had Mr. Had arrow had not thought that that subpoena was invalidated by, by the standard, the Southern district courts order saying, Hey, you have to get approval prior to serving third party subpoenas for the collection of debt. He wouldn't have served that second subpoena, which is the same subpoena, virtually the same that he served before, which, and he, and the only, and he didn't serve it by, by any means recognizable. He served it by mail, uh, by email, excuse me. So I think that for those reasons, uh, you know, this is just one, this is one of those hotly fought, you know, disputes that's been going on for a lot of years between, uh, Mr. Golden and arrowhead and, uh, and, and seven arts entertainment pitch pro is a third party in this proceeding. And it's a, and it deserves the protections of the court and for an overbroad subpoena that wasn't served correctly and wasn't served at all. And, and, and was sir, it's, it's just, we are picture pros entitled to that kind of protection and I think you're well over your time. So I'm sorry, your honor. I kept seeing it go to one. I said, I saw it at one 30 and I said, wow, I get more time than I thought. Sorry about that. Okay. That's fine. That's fine. Um, but I think we understand your arguments. Um, okay. Arrowhead capital finance versus picture pro, uh, will be submitted and this session of the court is adjourned this afternoon. Thank you. Thank you. Thank you again, your honor. Thank you.
judges: WARDLAW, FLETCHER, Kennelly